NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARGARET RAMOS,** : | |
| : | |
| Plaintiff, : | Civil Action No. 14-3971 (ES) |
| : | |
| v. : | OPINION |
| : | |
| **CAROLYN COLVIN,** | |
| **Acting Commissioner of Social Security,** : | |
| : | |
| Defendant. : | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Plaintiff Margaret Ramos seeking review of an Administrative Law Judge's ("ALJ") decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the decision of the ALJ is affirmed.

**I.    Background**

Plaintiff alleges disability due to numerous impairments, including lumbar radiculopathy, cervical myelopathy, vascular disease, demyelinating disease, Lupus, anemia, anxiety, and depression. (Administrative Record ("Tr.") at 22, 245). She alleges that her disability commenced on October 1, 2012, at which time she was forty-five years old. (*Id.* at 22, 30, 217, 218-20).

On November 27, 2012, Plaintiff applied for DIB. (*Id.* at 22). Her application was denied initially on July 10, 2013, and again upon reconsideration on October 4, 2013. (*Id.*). Plaintiff

1

subsequently requested a hearing before an Administrative Law Judge, and the hearing was held on November 26, 2013 before ALJ James Kearns ("ALJ Kearns"). (*Id.*).

On January 10, 2014, ALJ Kearns issued a decision finding that Plaintiff was not disabled. Plaintiff requested review of the ALJ's decision on April 16, 2014, but the Appeals Council of the Social Security Administration denied her appeal on April 24, 2014. (Tr. at 1-3). Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). *Id.*; *see also* 20 C.F.R. § 404.981.

On June 20, 2014, Plaintiff appealed the Commissioner's decision by filing the Complaint. (D.E. No. 1, Complaint). The administrative record was filed on February 6, 2015, (D.E. No. 8), and the parties briefed the issues raised by Plaintiff's appeal. (D.E. No. 11, Plaintiff's Brief in Support of Review ("Pl. Mov. Br."); D.E. No. 19, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The matter is now ripe for resolution.

## II.     Legal Standards

### A.     Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would

have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3rd Cir. 1992).

### B.    Standard for Awarding Benefits

To be eligible for DIB under Title II of the Social Security Act, a claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II). Additionally, claimants must satisfy the insured status requirements set forth in § 423(c). *See id.*

An individual is deemed disabled under Title II if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or an be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4). If at any point in this sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the evaluation stops. *Id.* Proper procedure also requires that the Commissioner determine the individual's residual functioning capacity ("RFC") before proceeding to step four. 20 C.F.R. § 404.1520(e), 416.920(e). RFC is defined as the most the individual is capable of doing despite her limitations, including those that are not severe, and it is based on all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).

### III.   ALJ James Kearns's Decision

ALJ Kearns found Plaintiff not disabled under the Social Security Act. (Tr. at 22-31). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2012. (*Id.* at 24).

At step two, the ALJ identified Plaintiff's degenerative disc disease, lupus, and substance addiction disorder as severe impairments. (*Id.*). The ALJ observed that "[t]hese impairments

4

[were] shown to result in vocationally significant limitations and [had] lasted at a 'severe' level for a continuous period of more than 12 months." (*Id.*). However, the ALJ also determined that Plaintiff's medically determinable mental impairment of an affective disorder and anxiety were non-severe because these impairments "[did] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities . . . ." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments. (*Id.* at 26). The ALJ addressed Listing Sections 1.04 (disorder of the spine); 12.09 (substance abuse disorders); and 14.02 (systemic lupus erythematosus). (*Id.*). According to ALJ Kearns, "[n]o treating or examining physician [had] mentioned findings that [were] the same or equivalent in severity to the criteria" of the listings, "nor [did] the evidence show signs or findings that [were] the same or equivalent to those of any listed impairment." (*Id.*).

At step four, the ALJ determined Plaintiff's RFC. (*Id.* at 26-30). The ALJ found that she had the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (*Id.* at 26-27). The ALJ added that Plaintiff's work must allow the option to sit or stand at will while staying on task. (*Id.* at 26-30). The ALJ further noted that Plaintiff could only perform simple and routine tasks. (*Id.*). In support of this conclusion, the ALJ explained that he had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR § 404.1529 and SSRs 96-4p and 96-7p." (*Id.* at 27). The ALJ further noted that he also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and Social Security Rulings ("SSR(s)") 96-2p, 96-5p, 96-6p and 06-3p. (*Id.*).

At step four, the ALJ also found that Plaintiff was unable to perform her past relevant work because "it is too physically and mentally demanding." (*Id.* at 30). ALJ Kearns stated that Plaintiff's past relevant work as a general clerk and a van driver exceed her RFC. (*Id.*).

At step five, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, she could perform other occupations in the national economy. (*Id.* at 30-31). In arriving at this conclusion, the ALJ consulted with a vocational expert ("VE") and adopted the VE's opinion that Plaintiff would be able to perform the requirements of representative occupations such as document preparer, order clerk, and table worker. (*Id.*). Based on his analysis of the record, the ALJ determined that Plaintiff would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 31). Therefore, the ALJ concluded that a finding of "not disabled" was appropriate. (*Id.*).

**IV.     Discussion**

On appeal, Plaintiff asserts that the ALJ's decision was not supported by substantial evidence for four reasons. (Pl. Mov. Br. at 1, 15-30). First, Plaintiff argues that the ALJ erred in finding, at step two, that her anxiety and depression were non-severe. (*Id.* at 15-19). Second, she argues that the ALJ erred in weighing the opinion evidence for his RFC determination. (*Id.* at 20-26). Third, she argues that the ALJ erred in considering the required factors when assessing Plaintiff's credibility as it relates to the intensity, persistence, and limiting effects of her symptoms. (*Id.* at 26-29). Fourth, Plaintiff argues that the ALJ erred at step five by relying on VE testimony provided in response to an incomplete hypothetical. (*Id.* at 29-30). The Court will address Plaintiff's arguments in turn.

### A. Severity of Plaintiff's Impairments at Step Two

Plaintiff argues that the ALJ's determination at step two was not supported by substantial evidence for two reasons. (*Id.* at 17-19). In particular, Plaintiff contends that "the ALJ's analysis of these imparments is contradicted by the medical opinion evidence upon which he directly relied." (*Id.* at 17). Moreover, Plaintiff argues that "the treatment notes and opinions from Plaintiff's treating sources further undermines the ALJ's conclusion that Plaintiff's mental impairments are non-severe." (*Id.* at 18). Therefore, Plaintiff concludes the ALJ erred in finding that Plaintiff's anxiety and depression were non-severe. (*Id.* at 19).

The Court concludes that any error ALJ Kearns may have committed at step was harmless. If an ALJ favors a claimant at step two, "even if he . . . erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless." *Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 145 n.2 (3d Cir. 2007). Indeed, "where the Commissioner finds that the claimant suffers from even one severe impairment, any failure . . . to identify other conditions as being severe does not compromise the integrity of the analysis." *Ross v. Astrue,* No. 08–5282, 2010 WL 777398, at *5 (D.N.J. Mar. 8, 2010) (citing *Salles,* 229 F. App'x at 145 n.2; *Rivera v. Comm'r of Soc. Sec.,* 164 F. App'x 260, 261 n.2 (3d Cir. 2006)). Thus, if an ALJ commits an error at step two but nonetheless finds in the claimant's favor at this step, the error is harmless "because, when an ALJ makes an RFC determination, he must consider the combined effect of all the [claimant's] impairments, whether those impairments are severe or not-severe." *Williams v. Comm'r of Soc. Sec.,* No. 12–5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013) (citing 20 C.F.R. § 404.1523).

Here, ALJ Kearns found in Plaintiff's favor at step two. Indeed, the ALJ found that Plaintiff's degenerative disc disease, lupus, and substance addiction disorder were severe. (Tr. at

7

24). Given this determination in Plaintiff's favor, the ALJ proceeded with the five-step evaluation process. Accordingly, if ALJ Kearns did in fact commit an error at step-two, such error was harmless.

### B. Residual Functioning Capacity Analysis

Next, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ erred in weighing the opinion evidence. (Pl. Mov. Br. at 1, 20-26). Specifically, Plaintiff contends that the ALJ: erred in rejecting the opinion of consultative examiner; relied upon non-examining medical consultants opinions that were contradicted by state agency physicians; and gave little weight to the opinion of Plaintiff's treating physician. (*Id.* 21-26).

First, Plaintiff contends that the ALJ erred in failing to properly consider the examination and opinion of consultative examiner Dr. Victoria C. Miller. (Pl. Mov. Br. at 21-22). Dr. Miller examined Plaintiff on June 12, 2013. (Tr. at 519). After the examination, Dr. Miller diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder, and opined that Plaintiff had moderate stressors associated with chronic pain. (*Id.* at 25, 521). According to Dr. Miller, Plaintiff had "visible anxiety, which would negatively impact her capacity to interact . . . with . . . co-workers," and showed indications of "moderate difficulty following complex directions and instructions in a work setting." (*Id.* at 521). Dr. Miller observed that Plaintiff was "mildly agitated" and became "restless throughout the exam." (*Id.* at 520).

Upon review of Dr. Miller's report, the ALJ concluded that "the claimant's presentation that day cannot be held as indicative of [Plaintiff's] functioning and presentation on a regular basis." (*Id.* at 25). "In assessing medical evidence, an ALJ may reject any physician's opinion that is either contrary to other medical evidence of record, or insufficiently supported by clinical

data." *Mays v. Barnhart*, 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002) (citing *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988); *Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir. 1985)). "An ALJ can reject a treating physician's opinion, and thus obviously a consultative examiner's opinion as well, where the opinion is (1) not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence of record." *Kreuzberger v. Astrue*, No. 07-529, 2008 WL 2370293, at *4 (W.D. Pa. June 9, 2008) (citing 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2)).

Significantly, the ALJ based his decision on Plaintiff's daily functioning activities. Indeed, the ALJ indicated that Dr. Miller's report was inconsistent with Plaintiff's ability to "drive, travel, and care for her personal needs." (Tr. at 25). The ALJ also cited the report of Dr. Hilary B. Kern to further establish that Plaintiff's level of functioning demonstrates that she is not disabled. (*Id.* at 25). Dr. Kern noted "[i]ndependent ambulation without a cane" and that Plaintiff can transfer in and out of a chair without difficulty." (*Id.* at 515). Moreover, Dr. Kern also indicated that Plaintiff can "likely perform a full squat," and "lift as tolerated," and "sit, stand, and walk for prolonged periods." (*Id.* at 516).

ALJ Kearns also cited Plaintiff's Function Report, where she indicated that she cleans, does laundry, and occasionally exercises. (*Id.* at 286). Moreover, to further discredit Dr. Miller's report, ALJ Kearns noted that Plaintiff "stated that she could not work given her pain, not her psychiatric problems." (*Id.*).

For all these reasons, the Court concludes that the ALJ did not err in discrediting Dr. Miller's report. Dr. Miller's report was inconsistent with substantial evidence from the record. Thus, the ALJ was entitled to give the report less weight.

9

Next, Plaintiff contends that the ALJ erred in relying upon the opinions of non-examining medical consultants. (Pl. Mov. Br. at 22). In particular, Plaintiff contends that the ALJ's finding that "Plaintiff had no limitation in social functioning and only limitations in maintaining concentration, persistence, or pace" contradicts the state agency physicians' determinations that Plaintiff has "moderate difficulties maintaining social functioning and concentration, persistence, or pace." (*Id.*). Plaintiff believes that this was in error because the ALJ relied on the state agency physicians. (*Id.*). According to Plaintiff, these determinations were not reflected in the RFC assessment. (*Id.*).

ALJ Kearns determined that Plaintiff's depression and anxiety did "not cause more than minimal functional limitations," and thus, are not-severe. (Tr. at 25). Further, the ALJ determined that Plaintiff had no limitations in social functioning, and a mild limitation in concentration, persistence, or pace. (*Id.* at 25-26). The ALJ relied on the reports of two disability examiners who reviewed Plaintiff's medical records. (*Id.* at 25). In 2013, Bruce Welch and Robert Lynch opined that Plaintiff had moderate difficulties in maintaining social functioning and concentration, persistence, or pace. (*Id.* at 82, 97). Mr. Welch and Mr. Lynch both concluded that Plaintiff could understand and execute instructions and maintain concentration, persistence, or pace. (*Id.* at 87, 102). They also concluded that Plaintiff could adequately relate and adapt in work settings. (*Id.* at 87, 102). Both examiners indicated that Plaintiff had medically determinable impairments in the affective disorders and anxiety disorders listings. (*Id.* at 82, 97). However, they ultimately determined that Plaintiff was not disabled. (*Id.* at 73, 104).

Although the ALJ recognized Plaintiff's psychiatric problems, he concluded that they were not severe. In doing so, the ALJ relied on a string of exhibits, including: an examination report from Palisade Behavioral Care – Jersey City, which indicated that Plaintiff's "mood and affect are

10

normal," (*Id.* at 441); a neurological report indicating that Plaintiff's "mental state is normal," (*Id.* at 511); and a psychiatric evaluation from Christ Hospital indicating that Plaintiff's antidepressants were helpful, (*Id.* at 716). Accordingly, there was substantial evidence to support the ALJ's determination that Plaintiff's anxiety and depression were not severe.

Moreover, there was substantial evidence to support the ALJ's determination that Plaintiff had no limitations in social functioning. Indeed, Mr. Welch and Mr. Lynch determined that Plaintiff had moderate difficulties in maintaining social functioning. But, the ALJ relied upon Plaintiff's own reports as to her social functioning. According to Plaintiff, she is able to travel to Puerto Rico, occasionally drive, socialize with friends, attend appointments, and shop. (*Id.* at 25). Moreover, Plaintiff has a good relationship with her family. In addition, the ALJ cited at least eight examination reports indicating that Plaintiff "was cooperative during examinations and well related." (*Id.* at 26). Although Mr. Welch and Mr. Lynch determined that Plaintiff exhibited moderate difficulties in social functioning, the Court determines that there was substantial evidence for the ALJ to conclude that Plaintiff suffered from no limitations in this area.

Similarly, with respect to Plaintiff's mild limitation within the area of concentration, persistence, or pace, the Court concludes that the ALJ's determination as supported by substantial evidence. The ALJ recognized that Plaintiff may experience difficulty concentrating on complex tasks due to her pain. (*Id.* at 26). He supported this determination with various examination reports stating the same. (*Id.*). However, he clarified that this limitation was not due to her psychiatric condition, "given her ability to complete simple tasks on a routine basis." (*Id.*). Accordingly, the Court concludes that there was substantial evidence to support the ALJ's determination that Plaintiff has a mild limitation in this area.

Finally, Plaintiff's alleges that the ALJ erred in giving "little weight" to the opinion of Dr. Cunningham, Plaintiff's treating physician. (Pl. Mov. Br. 22). A treating physician's opinion is afforded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in case record." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Accordingly, an ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000).

Here, the ALJ cited to Dr. Cunningham's opinion that Plaintiff has "marked psychiatric limitations that prevent her from functioning in a work setting." (Tr. at 25). However, he gave this opinion "little weight" because "it is not supported by [Dr. Cunningham's] treatment notes." (*Id.*). According to ALJ Kearns, the treatment notes indicated that Plaintiff related well with no clinical findings, and that her psychiatric condition was stable with medication. (*Id.*).

On July 11, 2013, Dr. Cunningham completed a Mental Residual Functional Capacity Questionnaire. (*Id.* at 695-700). Dr. Cunningham indicated that Plaintiff suffers from major depressive disorder and anxiety. (*Id.* at 695). However, Dr. Cunningham's treating notes routinely indicated that Plaintiff's mood and affect were normal and under control, that her medication was helpful, and that she exhibited a clear, organized, connected thought process. (*Id.* at 402, 404, 406).

The Court concludes that the ALJ properly afforded Dr. Cunningham's Mental Residual Functional Capacity Questionnaire "little weight" based on substantial contradictory evidence. Indeed, Dr. Cunningham's treating notes indicated that Plaintiff was doing well. (*Id.* at 25). Moreover, numerous physicians provided positive determinations as to Plaintiff's mood and

12

mental state. Accordingly, the Court concludes that the ALJ did not err in affording little weight to Dr. Cunningham's medical opinion.

Given that the ALJ did not improperly weigh the opinion evidence in the record, the Court concludes that his RFC assessment was proper.

### C. Credibility Determination at Step Four

Plaintiff argues that the ALJ's credibility determinations are unsupported by substantial evidence. (Pl. Mov. Br. at 26-29). An ALJ's credibility determination must be supported by substantial evidence. *Kerik v. Astrue*, No. 08-59, 2008 WL 2914793, at *7 (W.D. Pa. July 24, 2008). When an ALJ makes a credibility determination, he or she is entitled to great deference by the district court. *Refer v. Barnhart,* 326 F.3d 376, 380 (3d Cir. 2003). Indeed, inconsistencies in the claimant's testimony allow an ALJ to find that the claimant's testimony as to his or her limitations is less credible. *Salles v. Commissioner of Soc. Sec.*, 229 F. App'x 140, 146 (3d Cir. 2007). However, an ALJ must support the credibility determination with "specific reasons . . . and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and reasons for that weight." SSR 96-7p.

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 29). According to the ALJ, Plaintiff testified that she volunteered to be laid off from her job because of her pain, but her treating physicians indicated that her back pain was manageable with treatment and avoidance of strenuous activities. (*Id.*). Moreover, the ALJ found her allegations less credible given her daily functioning, which includes caring for her daily needs,

13

international travel, and driving. However, the ALJ did not fully discredit Plaintiff's allegations, finding that her reports of pain and her magnetic resonance imagining and electromyography result supported a limited functioning capacity. (*Id.*).

Plaintiff raises two arguments with respect to this credibility determination. (Pl. Mov. Br. at 27-29). First, Plaintiff argues that the ALJ erred in finding that she "volunteered to be laid off from her job due to pain" despite a finding by her treating doctors that "her back pain was manageable with conservative treatment and the avoidance of strenuous activities." (*Id.* at 27-28 (quoting Tr. at 29)). Plaintiff contends that this conclusion is "contradicted by the opinions of Plaintiff's treating sources, which indicate she is capable of less than the full range of sedentary work, and would miss three or more days of work per month due to her impairments and treatment." (Pl. Mov. Br. at 28; Tr. at 29, 704-705, 721-722). The Court disagrees.

The ALJ's credibility determination and sedentary work finding were not contrary the opinions of Plaintiff's treating physicians, but rather, were supported by substantial evidence. The ALJ gave little weight to Dr. Fogari's and Dr. Khan's opinion that Plaintiff could do less than the full range of sedentary work on the basis that these opinions were not supported by their treatment notes. (Tr. at 29). Indeed, Dr. Eugene Bulkin indicated that Plaintiff's impairments could be treated with conservative treatments. (*Id.* at 413). Moreover, Plaintiff was advised to attend physical therapy and perform exercises, and Dr. Bulkin noted some relief in her symptoms. (*Id.* at 411, 412, 465, 542). Along the same lines, Plaintiff's physicians advised her to avoid strenuous activity. (*Id.* at 417, 542, 539). The ALJ took this into consideration when fashioning his determination that Plaintiff suffered from a reduced functional capacity. (*Id.* at 29). As such, the Court concludes that the ALJ's determination was not contradictory to the opinions of Plaintiff's treating physicians.

Second, Plaintiff argues that the ALJ did not fully consider Plaintiff's testimony with respect to her daily activities. (Pl. Mov. Br. at 28). Moreover, Plaintiff argues that if the ALJ discredited Plaintiff's testimony, he failed to "articulate explicit and adequate reasons for doing so." (*Id.* at 29). The Court disagrees.

The ALJ did articulate an adequate reason for limiting Plaintiff's credibility: inconsistencies between Plaintiff's testimony regarding pain and the record evidence as it relates to her daily activities and treating physician opinions. (*Id.* at 29).

Additionally, there was substantial evidence to support the ALJ's decision to rely on a portion of Plaintiff's testimony, rather the complete account. Indeed, Plaintiff's testimony that she is unable to get up and take care of her own needs is directly contradicted by her Function Report, where she indicated that she goes to appointments, exercises "just a bit," and keeps busy with chores. (*Id.* at 263). Moreover, Plaintiff indicated that she drives, shops in stores, and does laundry. (*Id.* at 265, 266). Thus, the Court concludes that the ALJ did not fail to properly evaluate Plaintiff's testimony.

In sum, the Court finds that the ALJ's credibility determination was not in error.

**D.    The Hypothetical Posed to the VE at Step Five**

Finally, Plaintiff argues that the ALJ's step five determination is unsupported by substantial evidence because the ALJ relied on vocational expert testimony provided in response to an incomplete hypothetical question. (Pl. Mov. Br. at 29-30). The Plaintiff alleges that "the ALJ's errors in determining the RFC and Plaintiff's credibility render the Step 5 decision unsupported by substantial evidence because these errors resulted in an incomplete hypothetical question asked to the VE." (*Id.* at 30). Specifically, Plaintiff contends that "the hypothetical questions did not

15

properly incorporate the opinions of the treating sources, and wholly failed to account for Plaintiff's Lupus, anxiety, and depression." (*Id.*). The Court disagrees.

At step five of the sequential process, the ALJ has the burden of showing that the Plaintiff can perform other work that exists in significant numbers in the national economy. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). To meet this burden, an ALJ may elicit the help of a vocational expert ("VE") by posing a hypothetical question. *See Plummer*, 186 F.3d at 431. However, the ALJ may only rely on the VE's expert testimony if the "question accurately portrays the claimant's individual physical and mental impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

Here, the ALJ asked the VE whether, in light of Plaintiff's work history, testimony at the November 26, 2013 hearing before ALJ Kearns, and sedentary exertion level—which included the need for the option to sit or stand at will, while staying on task, and only performing simple and routine task, there was available work. (Tr. at 53-56). The Court concludes that this hypothetical encompasses all of Plaintiff's limitations, as found by the ALJ. *See Plummer*, 186 F.3d at 431 (upholding hypothetical where the ALJ asked the VE to consider claimant's age, education, past work experience, and exertional limitations). The ALJ found that Plaintiff suffered from only physical impairments, and accounted for these impairments by concluding that Plaintiff had a reduced functioning capacity. The ALJ's question to the VE included all of Plaintiff's limitations.

Moreover, Plaintiff's argument that the ALJ's errors in determining her RFC and credibility resulted in an incomplete hypothetical necessitates a finding that the ALJ committed such an error. Indeed, the Court did not agree with Plaintiff, and ultimately concluded that the ALJ's RFC assessment was proper. Thus, the hypothetical used was sufficient. *See Plummer*, 186 F.3d at 431 ("Because the ALJ did not err in rejecting this argument as inconsistent with the

16

objective medical evidence in the record as a whole, we conclude the hypothetical used was appropriate.").

## V. Conclusion

For the foregoing reasons, the Court AFFIRMS ALJ's decision. An appropriate Order accompanies this Opinion.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**